Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4573 | DATE | MARCH 30, 2000 |
| CASE TITLE | ODYSSEY RE (LONDON) LIMITED v. ALL AMERICAN LIFE INSUR. CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Plaintiff's amended motion for declaratory and injunctive relief [7] is granted in part and denied in part. Defendant's motion to compel arbitration [9] is denied. Defendant's motion for prearbitration security [10] is denied without prejudice. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant enjoining defendant from proceeding with the arbitration of the parties' existing dispute regarding the Slip Policy identified as No. AH 0115198.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | MAR 3 0 2000 | |
| | Notified counsel by telephone. | date docketed | 28 |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3/30/2000 | |
| WJS | courtroom deputy's initials | date mailed notice | |
| | | mqm | |
| | Date/time received in central Clerk's Office | mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ODYSSEY RE (LONDON) LIMITED,  )
                               )
            Plaintiff,         )
                               )
    v.                         )  No. 99 C 4573
                               )
ALL AMERICAN LIFE INSURANCE    )
COMPANY,                       )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND ORDER

The underlying disputes between the parties in this action concern whether plaintiff Odyssey Re (London) Limited[1] is liable to defendant All American Life Insurance Company on seven reinsurance contracts. All American demanded arbitration as to all seven contracts. Thereafter, Odyssey filed the present action seeking a declaration and/or injunction that it is not required to arbitrate the dispute concerning one of the reinsurance policies (the "Slip Policy"). In response, All American moved to compel arbitration as to the Slip Policy. All

---

[1] Odyssey has gone through various name changes during the period of time pertinent to this lawsuit and is not presently using that name. However, this opinion will continue to refer to it by that name.

American also moved to require Odyssey to provide prearbitration security regarding all seven reinsurance contracts. As to security, All American relies on 215 ILCS 5/123(5).[2]

Odyssey is a British corporation with its principal place of business in London. All American is an Illinois corporation with its principal place of business in Chicago. The amount in controversy as to the Slip Policy exceeds $75,000. The amount in controversy as to the other six reinsurance contracts also exceeds a total of $75,000.

The underlying facts concerning the Slip Policy are not complicated and, with a few potentially material exceptions, neither party contends any factual dispute exists. In 1997, Odyssey granted Euro International Underwriting Limited ("EIU") underwriting authority to bind Odyssey on specified classes of insurance and reinsurance. EIU, however, was limited as to the total value of policies that it could underwrite, as measured by the monetary value of the premiums. In 1998, EIU, purportedly acting on behalf of Odyssey, entered into an agreement with All American to participate in the Unicare Insurance Company Workers

---

[2]The parties unnecessarily filed a total of nine briefs containing many repetitive arguments and recitations of fact. Since another judge granted leave to file all those briefs, they will not be stricken. The parties, however, would have been better served by consolidating their presentation into three or four briefs. They have only themselves to blame if the court misses a different nuance or point that is mixed in with an otherwise redundant argument contained in one of the briefs.

Compensation Excess of Loss Reinsurance Contract covering the calendar year 1998 (the "Unicare Contract").[3] At least one document was signed in June 1998 and another document in November or December 1998. The parties dispute whether June or November/December should be considered the date of completion of the Slip Policy. Additionally, Odyssey contends that EIU acted without actual authorization because it had already exceeded its underwriting limit for 1998. Odyssey also contends that All American, through the broker acting as its agent, was aware that EIU lacked authority because it had exceeded its underwriting limits. All American does not admit either that EIU acted without actual authority or that All American was aware any underwriting limits had been exceeded.

A slip policy is a common type of policy in reinsurance. It contains an abbreviated statement of terms and generally incorporates another insurance contract to define the extent of coverage. The only portions of the Slip Policy pertinent to the present dispute read as follows:

CLASS:

To indemnify the Reinsured in respect of their participation on the Unicare Insurance Company, Workers Compensation Excess of Loss Reinsurance contract.

---

[3]Transferring all or part of a reinsurance risk to another reinsurance company is known as retrocession.

EXCLUSIONS: Employers Liability (Section B of Workers' Compensation Act). In all other respects to follow the original contract in every respect.

* * *

GENERAL CONDITIONS:

This Reinsurance is to pay as may be paid, and to follow all terms clauses and conditions on the original contract as detailed under the CLASS section of this Reinsurance.

Several Liability Notice (Reinsurance) LSW 1001.[4]

This contract of Reinsurance shall be governed by and construed in accordance with the law of the state of Illinois, U.S.A. under the jurisdiction of the courts of the state of Illinois, U.S.A. The Arbitration contract shall also be governed by the law and jurisdiction of the state of Illinois, U.S.A.

WORDING:

Agree to sign slip policy.

This acceptance slip constitutes the Policy for all purposes; however, a formal Policy, in substitution for this Slip Policy or any declaration hereunder, will be issued at any time at the request of the (Re-)Insured or any other Underwriters hereon.

The Slip Policy contains no other reference to arbitration. No party requested that a formal policy be issued in substitution for the Slip Policy.

---

[4]This is reference to a form clause (Lloyd's standard wording) concerning notice of several liability.

All American contends that the reference to an arbitration contract governed by Illinois law incorporates Illinois's International Commercial Arbitration Act ("ICAA"), 710 ILCS 30, and the procedures contained therein. Alternatively, All American contends the Slip Policy incorporates the arbitration provision of the Unicare Contract.

The ICAA did not go into effect until July 24, 1998. Odyssey contends that the Slip Policy was entered into in June 1998 and therefore it could not have incorporated the terms of the ICAA which was not yet in effect. All American contends the Slip Policy was not finalized until November or December 1998, after the ICAA went into effect. This dispute need not be resolved because, even assuming the ICAA was in effect at the time of contracting, the Slip Policy does not contain an effective arbitration clause.[5]

By its terms, the ICAA applies to an arbitration agreement between parties that have their places of business in different countries as long as the place of arbitration is in Illinois. 710 ILCS 30/1-5. The ICAA operates in conjunction

---

[5] All American does not rely on any Illinois arbitration statute other than the ICAA. Under Illinois's Uniform Arbitration Act, which was in effect throughout the pertinent time period, "[i]f the method of appointment of arbitrators is not specified in the agreement and cannot be agreed upon by the parties, the entire arbitration agreement shall terminate." 710 ILCS 5/3.

with applicable federal arbitration statutes. See 710 ILCS 30/1-5(a); 30/1-25. See also U.S.C. Title 9. Here, the place of arbitration arguably is Illinois because the parties have agreed to subject themselves to the courts of Illinois. See Jain v. de Mere, 51 F.3d 686, 689-90 (7th Cir.), cert. denied, 516 U.S. 914 (1995) (absent express selection of arbitration site, a district court can only compel arbitration at a site within its own district). When the parties' arbitration agreement is silent, the ICAA provides a method for selecting arbitrators and other procedural rules for the arbitration. Therefore, if the Slip Policy contains an applicable arbitration provision, it would not fail for lack of sufficient procedural terms.

The ICAA defines an arbitration agreement as "an agreement by the parties to submit to arbitration all or certain disputes that have arisen or that may arise between them in respect of a defined legal relationship, whether contractual or not." 710 ILCS 30/5-5(a). Accord 9 U.S.C. § 201 Art. II. The ICAA further provides:

> The arbitration agreement shall be in writing. An agreement is in writing if it is contained in a document signed by the parties or in an exchange of letters, telex, telegrams, or other means of telecommunication that provides a record of the agreement or in an exchange of statements of claim and defense in which the existence of an agreement is alleged by one party and not denied by another. The reference in a contract to a document containing an arbitration clause constitutes an arbitration agreement,

>     provided that the contract is in writing and the
>     reference is such as to make that clause part of
>     the contract.

710 ILCS 30/10-5(b).

Stating that the arbitration clause is governed by Illinois law is not itself an agreement to arbitrate. It in no way states the content of any arbitration agreement. Even if the ICAA provides the necessary procedures, there is no statement as to the scope of the arbitration, let alone a statement that the parties have agreed to arbitrate. In the language of the ICAA, there is no statement that disputes will be submitted to arbitration. Further, where the arbitration clause is included by reference to another document, the statement in the parties' agreement must be "such as to make that clause part of the contract." While the ICAA contains arbitration procedures, it does not contain an arbitration clause that can be incorporated into the Slip Policy. The provision relied upon by All American is a choice of law provision, not an arbitration provision. It provides what the governing law will be to the extent that the parties otherwise have an arbitration provision in the Slip Policy or separately enter into an arbitration agreement. Cf. Hoogovens Ijmuiden Verkoopkantoor B.V. v. M.V. Sea Cattleya, 852 F. Supp. 6, 7-8 (S.D.N.Y. 1994) (clause in contract construed as

establishing where arbitration would be held in the event the parties agreed to arbitrate).

Cases relied upon by All American are all distinguishable. None of those cases contains language that could be construed simply as a choice of law provision. They instead identify a type of arbitration and/or place of arbitration and state that arbitration is to "apply," see In re Arbitration Between Standard Tallow Corp. & Kil-Management A/S, 901 F. Supp. 147, 148 (S.D.N.Y. 1995),[6] or "be settled," Hoogovens Ijmuiden Verkoopkantoor, B.V. v. Canadian Fort Navigation Co. Ltd. of Montreal, 1992 WL 186701 *2-3 (N.D. Ill. July 22, 1992).[7] But see Sea Cattleya, 852 F. Supp. at 7-8 (finding the same language as in Canadian Fort to be an insufficient basis for enforcing arbitration). All American also cites Oriental Commercial & Shipping Co. v. Rosseel, N.V., 609 F. Supp. 75, 78 (S.D.N.Y. 1985), which enforced arbitration based on the language: "Arbitration: if required in New York City." Like Sea Cattleya, 852 F. Supp. at 7-8, this court would disagree

---

[6]This case included additional contractual language as well. Also, neither party contended the pertinent contract language did not constitute an enforceable arbitration clause. The dispute concerned which of two arbitration provisions in the contract should be applied.

[7]The court also relied on the parties' negotiations as evidence that they intended to refer disputes to arbitration. One of the parties specifically proposed that the clause be added to the contract.

- 8 -

with finding the language in Oriental Commercial to be anything other than an agreement as to the site of arbitration in the event the parties otherwise agreed to arbitrate.

Canadian Fort and Oriental Commercial reasoned that, by including in a contract a designation as to the location for arbitration, the parties evidenced an intent to arbitrate disputes that might arise. This court respectfully disagrees with such reasoning to the extent it is based solely on including a reference to arbitration in a contract. If the language itself does not state there is to be arbitration or otherwise support that the parties are actually agreeing to arbitrate, there must be some other support for concluding that the parties actually reached an agreement to arbitrate. There is no contention by All American that extrinsic evidence would show that the parties actually agreed to arbitrate. There is no contention that any language agreeing to arbitrate was mistakenly omitted from the final version of the Slip Policy. The choice of law provision in the Slip Policy indicates the parties considered the possibility of arbitration, but does not itself constitute an agreement to arbitrate.

Plaintiff's other contention is that the Slip Policy incorporates the arbitration provision of the Unicare Contract. The General Conditions provide that the Slip Policy is to "follow all terms clauses and conditions" of the Unicare Contract "as

detailed under the CLASS section." Therefore, incorporation of the Unicare Contract is limited to the incorporation stated in the Class section of the Slip Policy. That section delineates the class of coverage. Therefore, the provisions therein must be understood as delineating the class of coverage, not other terms of the Slip Policy. When it states, under exclusions from the class of coverage, that "[i]n all other respects to follow the original contract in every respect," that can only be understood as referring to following in all respects the class of coverage contained in the Unicare Contract. That provision cannot reasonably be read as incorporating all other terms of the Unicare Contract, such as the arbitration clause.

Since the Slip Policy does not contain an agreement to arbitrate, it is unnecessary to consider Odyssey's other asserted grounds for denying enforcement. No opinion is expressed as to whether the Slip Policy is unenforceable because EIU lacked authorization nor is any opinion expressed as to whether such an issue would have been for the court or the arbitrators. All American's motion to compel arbitration will be denied and Odyssey will be granted relief enjoining arbitration of the dispute as to the Slip Policy.

Still to be decided is the question of whether All American is entitled to prearbitration security. Obviously, since the Slip Policy arbitration will be enjoined, All American

is not entitled to prearbitration security as regards the Slip Policy. Prearbitration security as to the six other contracts being arbitrated, however, is not moot.

Despite the plethora of briefs and documents that have been filed by the parties, little information is provided regarding the other six contracts. The parties provide All American's June 11, 1999 letter demanding arbitration as to all seven contracts and proposing that it be in Chicago. Odyssey responded with two July 12, 1999 letters, one concerning the Slip Policy and the second concerning the other six contracts. Only the latter letter is pertinent to the issue still before the court. In its letter, Odyssey states that the six contracts make only abbreviated reference to arbitration and it therefore requests that All American provide the arbitration language upon which it relies. In the meantime, Odyssey reserved its right to contest arbitrability as to all six contracts. Odyssey also notes that two of the contracts do not have Illinois choice of law or forum selection provisions and that it is premature to discuss a location for the arbitration. Subject to its reservation of right, Odyssey conditionally names an arbitrator. The additional contract language apparently was provided on August 30, 1999, but the parties only provide the cover letter. The August 30 letter again requests that Odyssey agree to proceed with arbitration. No copies of the other insurance contracts are

provided nor is a copy, or even a description, provided as to the pertinent arbitration language or choice of law provisions. There is no indication of any further proceedings as to arbitration of the six contracts occurring subsequent to the August 30 letter.[8]

The Illinois Insurance Code provides:

> Before any unauthorized foreign or alien company shall file or cause to be filed any pleading in any action or proceeding, including any arbitration, instituted against it, such unauthorized company shall either (1) deposit with the clerk of the court in which such action or proceeding is pending or with the clerk of the court in the jurisdiction in which the arbitration is pending cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in such action, proceeding, or arbitration; or (2) where the unauthorized company continues to transact the business of insurance by issuing new contracts of insurance or reinsurance, procure a certificate of authority to transact the business of insurance in this State.
> The court in any action or proceeding, in which service is made in the manner provided in subsections (3) or (4) may, in its discretion, order such postponement as may be necessary to afford the defendant reasonable opportunity to comply with the provisions of this subsection and to defend such action.

---

[8]A letter dated July 27, 1999 refers to an agreement between the parties to stay the Slip Policy arbitration during the pendency of the present litigation. The parties do not point to any similar agreement regarding arbitration of the other six contracts.

> Nothing in this Section is to be construed to prevent an unauthorized foreign or alien company from filing a motion to quash process or to set aside service thereof made in the manner provided in subsections (3) or (4) on the ground either (a) that such unauthorized company has not done any of the acts enumerated in subsection (2) or (b) that the person on whom service was made pursuant to subsection (4) was not doing any of the acts therein enumerated.

215 ILCS 5/123(5).

It would appear that this provision permits an independent court action[9] to require a responding, unauthorized insurer to post security as regards an arbitration and it would presumably be permissible to raise such a motion as a permissive counterclaim,[10] particularly here where there is an independent basis for jurisdiction over the counterclaim (complete diversity and an amount in controversy in excess of $75,000). One problem, however, is that the statute refers to placing the security with the "clerk of the court in the jurisdiction in which the arbitration is pending" and, although All American "propose[d]" Chicago as the location for the arbitration, Odyssey did not agree to the location and there is no showing of an arbitration

---

[9]It would appear that in a case like this where no sufficient presentation is made as to the need for, or the appropriate amount of, security, the request for security should first be presented to an arbitrator with court action being limited to enforcement of the arbitrator's grant of security.

[10]All American sought relief in the form of a motion, not a counterclaim.

provision requiring that the arbitration be at a location within the Northern District of Illinois. A further problem is that there is no showing that Illinois law applies to the arbitration, without which there is no basis for applying the statute. Cf. Continental Casualty Co. v. Certain Underwriters at Lloyd's, No. C-92-4094, slip op. at 10 (N.D. Cal. Nov. 30, 1998) (rprt. in Mealeys Litigation Reports: Reinsurance, Vol. 9, No. 15 (Dec. 10, 1998)). As previously stated, no party has provided a copy of any of the other six contracts or their arbitration provisions. An insufficient basis exists for entertaining All American's motion for security.

Odyssey, though, does not raise these arguments in response to All American's motion for prearbitration security.[11] Perhaps, after being provided with the specific arbitration provisions, Odyssey agreed that arbitration in Chicago governed by Illinois law was appropriate. But even assuming that is the situation and that it is appropriate to consider the merits of All American's motion, All American has not made a sufficient showing to grant its motion. Security is only required at the point that the unauthorized company files a pleading in the

---

[11]Odyssey also raises no objection that that it is not an unauthorized foreign company.

arbitration. All American contends that Odyssey's July 12, 1999 letter regarding the six contracts constitutes a pleading.[12]

In court proceedings, pleadings are the complaint, answer, and any reply, as well as any counterclaim or crossclaim. See Ill. Rev. Stat. 735 ILCS 5/2-602, 2-603; Fed. R. Civ. P. 7(a). Motions, including motions to dismiss, and discovery requests are not pleadings. Evergreen Media Corp. v. Radio & Television Broadcast Engineers, 1997 WL 282597 *4 n.5 (N.D. Ill. May 19, 1997). All American contends that arbitration is less formal and therefore pleadings should be given a broader meaning under § 123(5) when the issue is an arbitration, not a court proceeding. Again, All American has failed to provide pertinent information regarding the applicable arbitration rules, but it apparently also relies on the ICAA as regards the six contracts. The ICAA provides for the filing of a statement of the claimant's claim and for the filing of a statement of defense by the respondent. 710 ILCS 30/20-30(a). That would be the equivalent of pleadings in a court action. There is no indication or contention that Odyssey has yet filed any such document.

---

[12]All American also relied on Odyssey's filing of the present action, though it may have dropped that argument in its reply. In any event, that argument could only pertain to arbitration of the Slip Policy, not the arbitration of the other six contracts that is presently under consideration.

Even if the arbitration agreements provide for some procedure other than those under the ICAA, the July 12 letter would not constitute a pleading. The letter requests copies of the pertinent arbitration provisions, objects to arbitrability, and only conditionally names an arbitrator. Neither All American's arbitration demand nor Odyssey's July 12 letter set forth the facts and issues of their dispute other than to identify the specific contracts of insurance that underlie the disputes. Odyssey does not "respond[ ] to allegations, claims, denials, or defenses." Black's Law Dictionary 1173 (7th ed. 1999). All American has not shown that Odyssey has filed a pleading in the arbitration.

Because All American has provided insufficient facts to show this court has authority to consider its request for prearbitration security, the motion will be denied without prejudice. Since the primary case is being dismissed, to the extent that All American desires to again attempt to seek a court order for security, it must file a new action in the appropriate court, which may or may not be the Northern District of Illinois.

IT IS THEREFORE ORDERED that plaintiff's amended motion for declaratory and injunctive relief [7] is granted in part and denied in part. Defendant's motion to compel arbitration [9] is denied. Defendant's motion for prearbitration security [10] is denied without prejudice. The Clerk of the Court is directed to

enter judgment in favor of plaintiff and against defendant enjoining defendant from proceeding with the arbitration of the parties' existing dispute regarding the Slip Policy identified as No. AH 0115198.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MARCH 30, 2000