Minute-Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| **CASE NUMBER** | **99 C 4573** | **DATE** | **FEB.** 6, 2002 |
| **CASE TITLE** | **SPHERE DRAKE INSURANCE LIMITED v. ALL AMERICAN LIFE INSURANCE COMPANY** | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ **STATUS HEARING SET FOR FEBRUARY 20, 2002 AT 11:00 A.M.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Motion [54-1] granted. The subpoena served on Lincoln National Life Insurance Company is quashed. Motions [75] and [56-2] granted in part and denied in part. Motions [78-1,2], [76-1] and [84-1] denied. Within 14 days, Sphere Drake shall produce certain Privilege Log documents and a privilege log covering the time period through May 31, 2000. All discovery to be completed by April 30, 2002. Within 7 days, All American shall file a motion expressly seeking to compel arbitration or expressly withdrawing its request to compel arbitration.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 0 7 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | Feb 0, 2002 | |
| | | | date mailed notice | |
| cw | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 FEB -6 PM 5:40 FILED-ED 10 | mqm mailing initials | 100 |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPHERE DRAKE INSURANCE LIMITED, )
)
                Plaintiff- )
                Counterdefendant, )
    v. ) No. 99 C 4573
)
ALL AMERICAN LIFE INSURANCE )
COMPANY, )
)
                Defendant- )
                Counterplaintiff. )

## MEMORANDUM OPINION AND ORDER

### I. PENDING CLAIMS

    The underlying dispute in this case concerns whether

plaintiff-counterdefendant Sphere Drake Insurance Limited,[1] an

English corporation, is liable to defendant-counterplaintiff All

American Life Insurance Company ("All American"), an Illinois

corporation, on a retrocession policy known as the "Unicare

Retrocession."[2]  In its Amended Complaint, Sphere Drake seeks a

---

    [1]Sphere Drake has gone through various name changes
during the times pertinent to this lawsuit.  Throughout today's
opinion, plaintiff-counterdefendant will be referred to as
"Sphere Drake," regardless of the time period under discussion.

    [2]"Retrocessional agreements are agreements by which an
insurance company which has agreed to reinsure a risk assigns all
or a portion of that risk to a reinsurer who accepts such risk.
In effect, a retrocessional agreement is reinsurance of
reinsurance."  United Equitable Insurance Co. v. Reinsurance Co.
of America, Inc., 157 Ill. App. 3d 724, 510 N.E.2d 914, 916 n.3
(1st Dist.), appeal denied, 117 Ill. 2d 554, 517 N.E.2d 1096
(1987).  The Unicare Retrocession reinsures the Unicare Insurance
Company, Workers Compensation Excess of Loss Reinsurance contract
(the "Unicare Reinsurance Policy").

declaration that the Unicare Retrocession is void because the Sphere Drake agent[3] that issued the retrocession exceeded its authority and/or violated its fiduciary duty with the knowledge of or in conspiracy with All American's agents.[4] All American counterclaims for a declaration that the Unicare Retrocession is valid and enforceable, compensatory damages for the amount due under the Unicare Retrocession, and an order that Sphere Drake post a letter of credit as required by the Unicare Retrocession (and related consequential damages due to the delay in posting the letter of credit).[5] As an affirmative defense, All American alleges that the Unicare Retrocession contains an arbitration provision that makes some or all of Sphere Drake's claims subject to arbitration.

---

[3] Sphere Drake's alleged agent is Euro International Underwriting Ltd. ("EIU"), an English corporation. EIU allegedly acted under a subdelegation of binding authority that Sphere Drake issued to Horace Holman International Limited ("Horace Holman"). It is further alleged that EIU's authorized principals were John Whitcombe and Christopher Henton, both of whom reside in England.

[4] It is alleged that Connecticut corporation WEB Management LLC ("WEB") was the agent of All American. It is further alleged that WEB is partially owned by a subsidiary of Stirling Cooke Brown Holdings Limited ("Stirling Cooke Holdings"), a Bermuda corporation. English corporations Stirling Cooke Insurance Brokers Limited and Stirling Cooke Brown Reinsurance Brokers Limited (collectively the "Stirling Cooke Subs") are also alleged to be subsidiaries of Stirling Cooke Holdings. It is alleged that the Stirling Cooke Subs acted as brokers and agents for All American, at the direction of WEB.

[5] All American also requested the relief of requiring Sphere Drake to post a bond during the pendency of this litigation in accordance with the Illinois Insurance Code. See 215 ILCS 5/123. The parties previously reached agreement as to the bond issue.

Earlier in this litigation, All American's motion to compel arbitration was denied and judgment was entered enjoining All American from proceeding with the arbitration it had initiated regarding the parties' dispute over the Unicare Retrocession. See Docket Entry 28 ("Sphere Drake I"). That determination was based on this court's construction of the Unicare Retrocession, which is in the form of a slip policy,[6] as not containing or incorporating an arbitration provision. See id. at 4-11. On appeal, however, the Seventh Circuit construed the Unicare Retrocession as incorporating an arbitration provision contained in the underlying Unicare Reinsurance Policy. Sphere Drake Insurance Ltd. v. All American Insurance Co., 256 F.3d 587, 589 (7th Cir. 2001) ("Sphere Drake II"). That, however, did not fully resolve the question of whether the parties' dispute was subject to arbitration. The then-pending original complaint contained the claim that the policy was void and unenforceable because EIU had exceeded the dollar limit of policies that it was authorized to issue on behalf of Sphere Drake (the "excess authority" claim). The original complaint did not contain the Amended Complaint allegations that the Unicare Retrocession was void because EIU, acting with the knowledge of or in conspiracy with WEB, the Stirling Cooke Subs, and Stirling Cooke Holdings, breached its fiduciary duty by issuing policies

---

[6]"A slip policy is a common type of policy in reinsurance. It contains an abbreviated statement of terms and generally incorporates another insurance contract to define the extent of coverage." Sphere Drake I, at 3.

on Sphere Drake's behalf that were commercially unreasonable
and/or designed to benefit WEB and the alleged coconspirators
(the "fiduciary duty" claim).[7]  The Seventh Circuit held that the
excess authority claim went to the issue of whether a contract
(the Unicare Retrocession which incorporated the arbitration
provision) came into being and therefore was for the court to
decide before sending the dispute to arbitration if it was found
that EIU had authority to issue the Unicare Retrocession.  _Sphere
Drake II_, 256 F.3d at 590-92.

Thus, the Seventh Circuit held that a remand was
necessary so that the district court could resolve the issue of
whether the Unicare Retrocession was void because EIU exceeded
its authority.  See _id._ at 592.  If the Unicare Retrocession was
found void on this ground, no enforceable arbitration provision
existed and Sphere Drake was entitled to court relief in its
favor declaring the Unicare Retrocession was void and that it was
not liable to pay under its coverage provisions.[8]  See _id._ at

---

[7]In the Amended Complaint, the excess authority and
fiduciary duty claims are not separated into different counts.
Instead, each of the three counts of the complaint are
denominated as stating both types of claims based on (I) the
Stirling Cooke Subs' knowledge of the fiduciary duty and excess
authority violations; (II) WEB's knowledge of the fiduciary duty
and excess authority violations; and (III) All American's imputed
knowledge of the fiduciary duty and excess authority violations
known by agents WEB and the Stirling Cooke Subs.

[8]Under such a circumstance, Sphere Drake would likely be
required to return the premiums All American has already paid.
Sphere Drake alleges that, before filing the present suit, it
informed All American that the Unicare Retrocession was void and
offered to return all premiums that had been paid.  All American
rejected the offer.

- 4 -

588, 592. If Sphere Drake's excess authority claim was rejected
by the court, then an enforceable arbitration clause existed.
However, the Seventh Circuit's impression was that "[t]he parties
appear to . . . agree on the extent of Sphere Drake's liability
if EIU had power to bind it." Id. at 588 (emphasis added).
Thus, "[i]f EIU did have authority, then there appears to be no
further dispute that needs to be resolved, by judge or
arbitrator." Id. at 592 (some emphasis added). If the Seventh
Circuit's assumptions as to appearances were true, there would be
no need to order arbitration because the parties would be in
agreement as to the appropriate relief once the excess authority
issue is ruled upon by the court. The Seventh Circuit left open
the possibility that an order of arbitration would be appropriate
if "some additional issue for private dispute resolution surfaces
later in the case." Id.

Because it "appeared" that the district court's prior
denial of an arbitration order and enjoining of the pending
arbitration would ultimately be appropriate relief, the Seventh
Circuit labeled its ruling as an affirmance even though it
remanded the case for further proceedings. "Accordingly, the
judgment is affirmed (there will be no arbitration unless some
additional issue for private dispute resolution surfaces later in
the case) and the case is remanded with instructions to resolve
the parties' only real dispute: the extent of EIU's authority."
Id. It still appears that the parties may already agree or would
be likely to reach agreement as to the appropriate relief if the

Unicare Retrocession were to be found enforceable. However, an issue in addition to the excess authority claim has surfaced in the Amended Complaint.[9] If Sphere Drake's excess authority claim is denied by the court, then the fiduciary duty claim would also have to be resolved; if Sphere Drake succeeds on its excess authority claim, though, there would be no enforceable contract and it would be unnecessary to reach the fiduciary duty claim. If the fiduciary duty claim is also an issue for the court, then the court could resolve that claim as well and there would still be no issue for arbitration, assuming the ruling was in Sphere Drake's favor or there was no disagreement as to appropriate relief. However, if the fiduciary claim should first be first resolved in arbitration, denial of the excess authority claim would result in an order of arbitration for the remaining issues.[10] Therefore, it must be considered whether the fiduciary

---

[9]After Sphere Drake I held that the Unicare Retrocession did not contain an arbitration provision, Sphere Drake filed suit in the Circuit Court of Cook County, Illinois (the "Cook County case"), raising both the excess authority and fiduciary duty claims. After the Seventh Circuit's Sphere Drake II remand, the Cook County case was removed to federal court and the Amended Complaint consolidated all allegations into a single case. See Sphere Drake Insurance Ltd. v. All American Life Insurance Co., 2001 WL 1035723 (N.D. Ill. 2001).

[10]Before the appeal, All American moved to compel arbitration. As explained above, the Seventh Circuit "affirmed." Therefore, the denial of the motion to compel arbitration was not vacated, though the Seventh Circuit's remand instructions could be construed as effectively vacating the denial of the motion to compel arbitration. While All American alleges an affirmative defense that issues are subject to arbitration, its prayer for relief does not request arbitration and it has not filed any written motion expressly renewing its request to compel arbitration. In some of its briefs regarding the pending

duty claim is an issue for the court in determining whether there
is an enforceable arbitration provision or an issue that is to be
first decided by an arbitrator.

Another case brought by Sphere Drake contained claims
that are very similar to the fiduciary duty claims in this case.
See <u>Sphere Drake Insurance Ltd. v. Clarendon National Insurance
Co.</u>, 263 F.3d 26, 29, 33 (2d Cir. 2001) (Cudahy, J., sitting by
designation) ("<u>Clarendon</u>").  In <u>Clarendon</u>, the Second Circuit
expressly followed Third Circuit and Ninth Circuit law while
noting that the Seventh Circuit in <u>Sphere Drake II</u> had implicitly
applied the same rule in that it approvingly cited the same Third
Circuit and Ninth Circuit cases.  See <u>Clarendon</u>, 263 F.3d at 31
(citing <u>Sandvik AB v. Advent International Corp.</u>, 220 F.3d 99,
106-07 (3d Cir. 2000); <u>Three Valleys Municipal Water District v.
E.F. Hutton & Co.</u>, 925 F.2d 1136, 1140 (9th Cir. 1991); <u>Sphere
Drake II</u>, 256 F.3d at 590-91).  The rule followed in those cases
is that there is a distinction between void and voidable
contracts.  If a contract containing an arbitration provision is
claimed to be void <u>ab initio</u>, the issue of voidness is to be
resolved by the court before the arbitration clause can be
enforced.  If the contract is claimed to be voidable, that issue

---

discovery motions, though, All American refers to the fiduciary
duty claim still being subject to arbitration.  It will presently
be assumed that All American is still seeking to compel
arbitration of any arbitrable issues.  However, to avoid any
ambiguity, within seven days All American shall file a written
motion either (a) expressly seeking to compel arbitration or (b)
expressly withdrawing its request to compel arbitration.

is for the arbitrator unless the arbitration clause itself is voidable, not just the contract as a whole. Clarendon, 263 F.3d at 31-32. The fiduciary duty claims in Clarendon, which were governed by New York law, were found to go to the voidability of the contract as a whole and therefore were to be resolved by the arbitrator, not the court. Id. at 33-34. In this case, it is alleged that the third parties (All American and its agents) knew that EIU was breaching its fiduciary duty to Sphere Drake. Therefore, it must be determined whether, under Illinois law,[11] a breach of fiduciary duty known by a contracting third party makes the contract void ab initio or voidable. If the former, the fiduciary duty claim is for the court. If the latter, the fiduciary duty claim is for the arbitrator.

It is alleged that, instead of acting in Sphere Drake's interest, EIU (with the knowledge of the All American parties, but not Sphere Drake's knowledge) acted in the interest of itself and the All American parties in issuing a commercially unreasonable policy. Such conduct would be a breach of EIU's duty of loyalty. See Home Federal Savings & Loan Association of Chicago v. Zarkin, 89 Ill. 2d 232, 432 N.E.2d 841, 846 (1982).[12]

---

[11]The Unicare Retrocession contains an express choice of law provision.

[12]As to the specific issue of a land trustee being permitted to provide credit to the beneficiary of the land trust, Zarkin was subsequently superseded by a statutory amendment. Zarkin's underlying holdings as to fiduciary duties and self-dealing were not subsequently overruled. See Slovick v. All American Bank of Chicago, 163 Ill. App. 3d 741, 516 N.E.2d 947, 950 (1st Dist. 1987).

Where a fiduciary engages in self-dealing without the knowledge or permission of its principal, the transaction is voidable at the option of the principal. Id.; Bold v. Mid-City Trust & Savings Bank, 279 Ill. App. 365, 367 (1st Dist. 1935). Other jurisdictions are in accord. See United States v. Dunn, 268 U.S. 121, 131 (1925); Koppell v. 4987 Corp., 2001 WL 47000 *8 (S.D.N.Y. Jan. 19, 2001); Estate of Norman A. Helfan Litigation v. Capital Management Group, Inc., 2000 WL 1522857 *9 (E.D. Pa. Oct. 13, 2000); Auction Effertz, Ltd. v. Schecher, 611 N.W.2d 173, 177 (N.D. 2000); Eagan by Keith v. Jackson, 855 F. Supp. 765, 779 (E.D. Pa. 1994). Bringing a third party into the self-dealing transaction (with the third party's knowledge of the self-dealing[13]) does not make the transaction void ab initio instead of voidable. See Dunn, 268 U.S. at 131. Additionally, to the extent Sphere Drake characterizes the fiduciary duty violations as fraud of which the All American parties were aware,[14] the law is clear that fraud in the inducement goes to

---

[13]The third party's knowledge of the fiduciary breaches would preclude it from seeking to prevent rescission based on it being an innocent purchaser, see Lincoln Cardinal Partners v. Barrick, 218 Ill. App. 3d 473, 578 N.E.2d 316 (4th Dist. 1991); Blaise v. Ratliff, 672 S.W.2d 683 (Mo. App. 1984), or preclude the third party from seeking rescission in its own right on the ground that the agent acted in a dual role as the third party's fiduciary, see Monarch Insurance Co. of Ohio v. Insurance Corp. of Ireland Ltd., 835 F.2d 32, 36-37 (2d Cir. 1987).

[14]See Sphere Drake Position Statement (Docket Entry 60) at 11-12 (citing Evanston Bank v. Conticommodity Services, Inc., 623 F. Supp. 1014, 1032 (N.D. Ill. 1985)).

voidability, <u>Malatesta v. Leichter</u>, 186 Ill. App. 3d 602, 542
N.E.2d 768, 777-78 (1st Dist.), <u>appeal denied</u>, 128 Ill. 2d
664, 548 N.E.2d 1071 (1989), and that it is an issue for an
arbitrator (not the court), <u>Prima Paint Corp. v. Flood & Conklin</u>
<u>Manufacturing Co.</u>, 388 U.S. 395 (1967); <u>Sphere Drake II</u>, 256 F.3d
at 590.

If this court denies Sphere Drake's excess authority
claim, the fiduciary duty claim will be left for the arbitrator
to decide.  Therefore, in ruling on the pending motions, any
ruling on the merits will be limited to ruling on the excess
authority claim and any discovery that will be permitted will be
limited to discovery as to the excess authority claim.  It will
be left to the arbitrator to decide the merits of the fiduciary
duty claim and to determine the scope of permissible discovery as
to that issue.

The Amended Complaint contains detailed factual
allegations regarding the alleged breach of fiduciary duty.
These allegations are more than twelve pages in length and
include specific allegations as to a number of other reinsurance
policies issued by EIU.  <u>See</u> Amended Complaint ¶¶ 26-34.  It is
alleged that, prior to the June 1998 issuance of the Unicare
Retrocession, EIU issued 112 reinsurance policies on Sphere
Drake's behalf, almost all of which were brokered by the Stirling
Cooke Subs.  <u>Id.</u> ¶ 33.  Paragraph 33 specifically identifies 24
of these policies.  All but one of these 24 policies allegedly
were accepted in 1997.  <u>See id.</u> ¶¶ 33(A)(i), 33(B)(i), 33(C)(i),

33(D)(i), 33(E)(i).  The specific allegations as to excess authority are less than a page in length and are straightforward. See id. ¶ 35.  It is alleged that EIU was authorized to write up to $12,000,000 in estimated gross premiums for calendar year 1998 and that it had already exceeded that limit before the June 28, 1998 acceptance of the Unicare Retrocession.  It is further alleged that the Stirling Cooke Subs had been provided a copy of the binding authority containing the premium limit and that they were aware of the limit being exceeded because they had brokered all but one of the EIU-written policies that were issued prior to June 28, 1998.

## II.  SUMMARY JUDGMENT--COLLATERAL ESTOPPEL

Count II is based on WEB being an agent of All American. All American moves for summary judgment on this count on collateral estoppel grounds based on Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282 (S.D.N.Y. 2000) ("Odyssey"), summarily aff'd by unpublished order, 2 Fed. App. 109 (2d Cir. Jan. 18, 2001).  All American primarily focuses on Odyssey's dismissal of Sphere Drake's fraud claims against WEB related to commercial unreasonableness.  As discussed in § I supra, the court will not consider the merits of the present fiduciary duty claim, which is based in part on commercial unreasonableness.  Therefore, it will only be considered whether Sphere Drake is estopped as to any facts essential to its excess authority claim based on WEB being All American's agent.  In that

context, the issue is whether <u>Odyssey</u> estops Sphere Drake from contending that WEB knew EIU had exceeded the limits of its authority. A federal judgment has a collateral estoppel effect if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." <u>Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.</u>, 58 F.3d 303, 307 (7th Cir. 1995). <u>Accord</u> <u>Herbstein v. Bruetman</u>, 266 B.R. 676, 683 (N.D. Ill. 2001); <u>Berry v. Illinois Dept. of Human Services</u>, 2001 WL 111035 *13 (N.D. Ill. Feb. 2, 2001).

In <u>Odyssey</u>, Sphere Drake[15] brought common law fraud and Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1962(c) & (d)) claims against WEB and other parties (including EIU, Stirling Cooke Holdings, and the Stirling Cooke Subs) relating to the Unicare Retrocession and other reinsurance policies. As to WEB, it was held that, as to a number of aspects of each claim, Sphere Drake failed to plead the common law and RICO claims with sufficient specificity to satisfy Fed. R. Civ. P. 9(b). <u>See</u> <u>Odyssey</u>, 85 F. Supp. 2d at 293-304. The opinion, however, makes no mention of any allegation that EIU had exceeded its dollar limit of authority, let alone any mention of WEB's knowledge of such an occurrence. <u>Odyssey</u> does not provide any

[15]Odyssey Re (London) Limited is a predecessor to Sphere Drake.

basis for estopping any aspect of Sphere Drake's present excess
authority claim.  The summary judgment motion will be denied.

### III.  DISCOVERY MOTIONS

### A. All American's Motion to Dismiss or Compel

All American complains that Sphere Drake has failed to
provide information about other litigations or arbitrations
involving the same fiduciary duty allegations[16] as those
contained in this case.  All American further contends that
Sphere Drake's failure to provide such discovery is contrary to
orders entered before the Cook County case was removed to federal
court.  All American contends that failure to comply with those
orders is grounds for dismissal.  Alternatively, All American
seeks to compel compliance with its discovery requests.  Sphere
Drake disputes that it has violated any order entered in the Cook
County case and further contends that disclosing documents from
litigation and arbitration in England would violate English law.

It is unnecessary to construe the Cook County order or
resolve questions related to English cases.  There is no
contention by All American that this discovery is relevant to the
excess authority claim.  At the time the order was entered in the
Cook County case, <u>Sphere Drake II</u> had not yet been issued and the
parties and court were proceeding on the belief that none of the
claims were subject to arbitration.  As is discussed in § I

---

[16]All American refers to such allegations as the
"conspiracy" allegations.

<u>supra</u>, no further discovery will be permitted as to the fiduciary duty claim. Therefore, All American's motion to compel will be denied without prejudice to seeking such discovery in any arbitration proceeding that may proceed after this court rules on the excess authority claim.

### B. Lincoln National's Motion for Protective Order

While the Cook County case was pending, Sphere Drake served a subpoena on nonparty Lincoln National Life Insurance Company ("Lincoln National"). After the Cook County case was removed to this court, a subpoena was again served on Lincoln National. Lincoln National was not a party to the Unicare Retrocession. However, it is a party to five other reinsurance policies issued by Sphere Drake known as the "Big Ben Lineslip." EIU and the Stirling Cooke Subs apparently were involved in the issuance of the Big Ben Lineslip. Sphere Drake contends that discovery from Lincoln National regarding the Big Ben Lineslip could provide evidence of EIU's fiduciary duty breaches as to the Unicare Retrocession and/or evidence that the Stirling Cooke Subs were aware of EIU's breaches.

Again, there is no contention that this discovery is relevant to the excess authority claim and it apparently could not be relevant to that claim. The Big Ben Lineslip was issued in 1997. Therefore, it could not be a basis for EIU exceeding its authorization limit in 1998 and there is no contention that EIU also exceeded its limit in 1997. Therefore, the evidence also could not produce possibly relevant evidence that the

Stirling Cooke Subs were aware of EIU exceeding its limits in 1997. Lincoln National's motion will be granted.

## C. Sphere Drake's Motion to Compel

Sphere Drake moves to compel discovery as to any arbitrations or court cases between All American and WEB. All American represents that it has been involved in no court cases with WEB and only one arbitration, which the parties settled after a hearing. The arbitration concerned WEB's management fees in connection with two reinsurance contracts. Neither Sphere Drake nor EIU had any involvement in those contracts. All American admits that the Stirling Cooke Subs were involved in reinsuring a portion of the two contracts. However, All American denies that the Stirling Cooke Subs' involvement is in any way relevant to the claims in the present case, even the fiduciary duty claims. It also contends the discovery should not be permitted because the parties to the arbitration agreed the arbitration would be kept confidential. Sphere Drake disputes that the confidentiality agreement's own terms preclude disclosure in this case and otherwise contends a private confidentiality agreement cannot preclude discovery under the federal procedures. Sphere Drake contends the discovery could provide evidence disputing All American's denial that the Stirling Cooke Subs acted as its agents.[17] It also contends that

_____

[17]The actual denial is as follows. Sphere Drake alleges Stirling Cooke Subs "carried on business as insurance and reinsurance brokers and, in particular, as brokers and agents for All American, acting at the direction of All American's agent,

it could provide evidence that All American was aware of WEB's malfeasance.

The possible evidence regarding WEB's malfeasance would only go to the fiduciary duty claim and therefore would not be a basis for compelling discovery in this case. The existence of an agency relationship between All American and the Stirling Cooke Subs could possibly go to the excess authority claim, since Sphere Drake contends the Stirling Cooke Subs were aware EIU exceeded its authorized limits and that such knowledge should be attributed to All American as the Stirling Cooke Subs' principal. But being an agent as to another contract is not necessarily relevant to the Stirling Cooke Subs being All American's agents as to the Unicare Retrocession. Sphere Drake's contention, however, is that All American asserting an agency relationship in the WEB arbitration would judicially estop it from denying that relationship in the case sub judice. But asserting a lack of an agency relationship as to one contract is not necessarily inconsistent with denying it as to another contract. Judicial estoppel does not apply unless the positions taken in the two different proceedings are "clearly inconsistent." New Hampshire v. Maine, 121 S. Ct. 1808, 1815 (2001). Second, even

_____

WEB." Amended Complaint ¶ 16. In its Answer, All American "denies that [the Stirling Cooke Subs] acted as agents for All American for any and all purposes or with discretionary authority, but admits that WEB specifically instructed [the Stirling Cooke Subs], as reinsurance intermediaries, to bind coverage for the Unicare Retrocession in accordance with terms negotiated and approved by WEB."

assuming judicial estoppel can be based on an arbitration ruling, the party against whom judicial estoppel is invoked must have succeeded on the position in the prior proceeding. Id. It is true that, under some circumstances, a settlement can satisfy the success requirement. See Kale v. Obuchowski, 985 F.2d 360, 361-62 (7th Cir. 1993). However, it is doubtful that the issue of the Stirling Cooke Subs' agency was a necessary ingredient of the settlement reached as to WEB's management fees. While that cannot be conclusively determined without disclosure of the documents, it is another reason for concluding that the discovery is far afield.

It is found that the discovery being sought is too far removed from the excess authority claim and too unlikely to lead to the discovery of relevant evidence to justify granting the motion to compel. Sphere Drake's motion to compel will be denied.

### D. All American's Second Motion to Compel

All American moves to compel documents from an English case Sphere Drake filed against EIU, EIU's principals, and the Stirling Cooke Subs. Apparently, that case raises essentially the same allegations as Sphere Drake's Amended Complaint, except that (a) the suit is against the aforementioned parties instead of All American and (b) it raises allegations as to an additional 95 reinsurance contracts. Sphere Drake has invoked England's

litigation privilege in declining to turn over documents.[18]  All
American also complains that Sphere Drake's privilege log ends on
July 12, 1999 (the date this case was filed in federal court) and
should instead be updated through May 31, 2000 (the date the Cook
County case was filed).  Again, the parties fail to distinguish
between those documents relevant to the excess authority claim
and those only relevant to the fiduciary duty claim.  Presumably,
however, both claims are raised in the English lawsuit and some
documents may relate to the excess authority claim.  Virtually
all the documents at issue are listed on the privilege log as
being about the subject "Investigation of Horace Holman
facility," Horace Holman being the entity to which Sphere Drake
issued the binding authority which was then subdelegated to
EIU.  Sphere Drake does not dispute that the documents being
withheld were written by non-attorneys and that many involve
communications between non-attorneys and other non-attorneys.
The documents apparently are part of an internal investigation
that Sphere Drake conducted regarding reinsurance issued under
the Horace Holman binding authority, and Sphere Drake asserts
that the information was collected for use in contemplated
litigation.  Sphere Drake contends that litigation was first
anticipated on August 5, 1998 and represents that it no longer
invokes the privilege for any documents created before that date.

---

[18]As to all the documents presently at issue, Sphere
Drake also invoked the work product doctrine.  In response to All
American's motion, Sphere Drake no longer contends that the work
product doctrine applies to these documents.

It is unnecessary to decide the question of whether the
English litigation privilege is applicable to the discovery
proceedings conducted in the pending federal case.  Even assuming
it applies, Sphere Drake has not made a satisfactory showing that
the documents fall within the privilege.

Foreign law is generally established by a declaration, an
affidavit, or testimony of an expert on the law.  See Fed. R.
Civ. P. 44.1.  Sphere Drake provides the affidavit of David
Langley, an English solicitor who describes the litigation
privilege as follows:

> . . . The English law of litigation privilege
> protects from disclosure documents generated for
> the purposes of litigation which is pending or
> contemplated.  English law draws a distinction
> between the purpose for which the information is
> obtained and the purpose for which the document
> recording the information is brought into
> existence.  It is the latter purpose for which
> litigation privilege is concerned.  In order to
> attract the benefit of litigation privilege, a
> document must be produced in circumstances where
> litigation is in contemplation.  One of the
> leading authorities on this issue is that judgment
> of the Court of Appeal in <u>Buttes Gas and Oil Co v.
> Hammer (No 3)</u> [1980] 3 All ER 475 . . . .  At page
> 484 of the judgment, Lord Denning MR said as
> follows:
> "Privilege in aid of litigation can be
> divided into two distinct classes.
> The first is legal professional privilege
> properly so called.  It extends to all
> communications between the client and his legal
> adviser for the purposes of obtaining advice.
> It exists whether litigation is anticipated or
> not.
> The second [litigation privilege] only
> attaches to communications which at their
> inception come into existence with the dominant
> purpose of being used in aid of pending or
> contemplated litigation...It is not necessary
> that they should come into existence at the

> instance of the lawyer. It is sufficient if
> they have come into existence at the instance of
> the party himself with the dominant purpose of
> being used in the anticipated litigation."

Langley Aff. [Docket Entry 89] ¶ 23.

Since the privilege may interfere with the search for truth, it is to be construed narrowly. See United States v. Evans, 113 F.3d 1457, 1460 (7th Cir. 1997); McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 256 (N.D. Ill. 2000). The party invoking the privilege has the burden of showing that it applies. See In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000). The invocation of the privilege must be supported by specific facts as to each document at issue. Id.; Holifield v. United States, 909 F.2d 201, 204 (7th Cir. 1990). This will often necessitate the submission of an affidavit or declaration with specific facts and/or the submission of the documents in camera; conclusory or blanket assertions about the documents will not suffice. ConAgra, Inc. v. Arkwright Mutual Insurance Co., 32 F. Supp. 2d 1015, 1017 (N.D. Ill. 1999); In re Air Crash Near Roselawn, Ind. on October 31, 1994, 1997 WL 97096 *2 (N.D. Ill. Feb. 20, 1997); Allendale Mutual Insurance Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 139 (N.D. Ill. 1993).

Here, Sphere Drake's privilege log provides only the name of the author and (if applicable) recipient; a minimal description of the subject matter of the document (e.g., "Investigation of Horace Holman facility"); the date of the document; and its type (e.g., notes, memo, email). No

information is provided as to who any of the authors are or any specific facts as to the decision to investigate Horace Holman and the nature of the inquiry. No affidavit or declaration is provided from the authors of any of the documents or a Sphere Drake employee involved in the decision to investigate or the investigation itself. The entire description of the documents and circumstances contained in Sphere Drake's brief is:

> The documents at issue meet [the standard quoted in Langley's affidavit]. Sphere Drake contemplated litigation with regard to the conspiracy alleged in this case not later than August 5, 1998. ([Langley Aff.] ¶ 24.) And, as indicated by the subjects listed on Sphere Drake's privilege logs, each document withheld on litigation privilege grounds relates to the factual investigation undertaken by Sphere Drake to prepare for this litigation. (See Sphere Drake's Privilege Logs . . . .) Because each such document was prepared for the dominant purpose of collecting evidence for use in contemplated litigation, each of these documents is privileged under English law and was properly withheld by Sphere Drake. ([Langley Aff.] ¶¶ 23-26.)

Sphere Drake Reply [Docket Entry 86] at 6.

The only statements in Langley's affidavit that provide any support for these assertions are:

> 24. I am advised by Sphere Drake that litigation was in contemplation by Sphere Drake subsequent to a visit by representatives of Sphere Drake to the offices of the EIU defendants, and the review of files maintained by the EIU defendants which took place at that time. A report was produced as a consequence of that review of files on 5th August 1998, following which litigation was contemplated and anticipated; on 11th August 1998, Clyde & Co [Langley's firm] were instructed to act on behalf of Sphere Drake.

> 25. I have reviewed the documents
> designated in Sphere Drake's privilege log as
> subject to the English litigation privilege and
> confirm that it is my belief that those documents
> have been properly withheld from production in
> the English proceedings on the basis of the
> English rules governing privilege.

Nothing else is provided to support Sphere Drake's assertions as to the facts underlying the investigation and the application of the privilege.

Sphere Drake has neither asserted specific facts in support of its invocation of the privilege nor provided support for specific facts. Even assuming the English litigation privilege applies in the case sub judice, Sphere Drake has not met its burden of showing facts supporting that the privilege applies to its documents. To the extent they are relevant (see Fed. R. Evid. 26(b)(1)) to the excess authority claim, Sphere Drake will be required to produce Privilege Log Documents 1-2, 5-12, 14-16, 18-19, 32-33, 39-44, 48-49, 56, 63, 65, 70, 90-92, 98, 109-10, 112, 115-16, 122, 126, 129-31, 138, 143, 145, 148, 155, 189-91, and 198-200. A document need not be provided if it would only be relevant to the fiduciary duty claim.

Still to be resolved is the question of whether Sphere Drake should be required to provide a privilege log for the time period from July 12, 1999 to May 31, 2000. Although All American has provided a log for that time period, Sphere Drake contends it would be overly burdensome to do so because litigation had already commenced during that time period. Neither side cites

any law concerning the required time period for a privilege log. This court knows of no rule or case law holding that a privilege log need not cover the time period after litigation has commenced. However, since the parties have agreed that the log need go no further than May 31, 2000, neither party will be required to provide a log that goes beyond that date. Sphere Drake, however, will be required to provide a log that continues through that date. The log, however, should be limited to those documents relevant to the excess authority claim and responsive to a request to produce made by All American. Sphere Drake may omit from the log documents that were authored by litigation counsel in this case (which includes the Cook County case).

### E. Joint Motion to Extend Discovery

On September 10, 2001, prior to filing the three motions to compel and the motion for partial summary judgment, the parties had jointly moved to extend the time period for discovery. The motion was taken under advisement and the parties were directed to file a joint discovery plan.[19] The amount of time requested and the proposed discovery plan are based on the incorrect assumption that discovery would be permitted as to the fiduciary duty claim.

Limited to the excess authority claim, the discovery in this case will be substantially more limited than the parties proposed. The principal factual issues would be (a) on what

---

[19]The last of the pending motions became fully briefed on January 4, 2002.

date, if ever, did EIU first exceed any dollar-limit of its authority;[20] (b) what facts (and when) did Sphere Drake know about EIU exceeding any dollar-limit of its authority; (c) what facts (and when) did All American and its agents know about EIU exceeding any dollar-limit of its authority; and (d) the relationship between the Stirling Cooke Subs and WEB/All American. Also, since the commercial reasonableness of the Unicare Retrocession is no longer at issue, the parties no longer need experts. The parties should have already completed all paper discovery except that which was granted on All American's second motion to compel. The parties will be granted until April 30, 2002 to complete all discovery. Within 10 days, the parties shall schedule any remaining depositions.

IT IS THEREFORE ORDERED that:

(1) Lincoln National Life Insurance Company's motion for protective order [54-1] is granted. The subpoena served on Lincoln National Life Insurance Company is quashed.

(2) All American's motion to dismiss or to compel for plaintiff's failure to comply with discovery orders and rules [78-1, 2] is denied.

(3) All American's second motion to compel plaintiff to produce certain "investigation" documents and list responsive documents [75] is granted in part and denied in part. To the extent they are relevant to Sphere Drake's excess authority

---

[20]It is possible the parties are not in dispute on this issue.

claim, within 14 days, Sphere Drake shall provide All American
with copies of Sphere Drake's Privilege Log Documents 1-2, 5-12,
14-16, 18-19, 32-33, 39-44, 48-49, 56, 63, 65, 70, 90-92, 98,
109-10, 112, 115-16, 122, 126, 129-31, 138, 143, 145, 148, 155,
189-91, and 198-200.  Within 14 days, Sphere Drake shall provide
All American with a privilege log covering the time period from
July 12, 1999 through May 31, 2000.

(4) Sphere Drake's motion to compel defendant to answer
Interrogatory 8 [76-1] is denied.

(5) All American's motion for partial summary judgment
[84-1] is denied.

(6) Joint motion for extension of time for discovery
[56-2] is granted in part and denied in part.  Parties shall
complete all discovery by April 30, 2002.

(7) Within seven days, All American shall file a motion
expressly seeking to compel arbitration or expressly withdrawing
its request to compel arbitration.

(8) Status hearing set for February 20, 2002 at
11:00 a.m.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED:  FEBRUARY 6, 2002